UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Sullivan,<br><br>    Petitioner,<br><br>v.<br><br>Endeavor Air, Inc. f/k/a Pinnacle Airlines, Inc., f/k/a Express Airlines, Inc., f/k/a NWA Airlink,<br><br>    Respondent. | Case No. 15-cv-3534 (SRN/JSM)<br><br>**MEMORANDUM OPINION AND ORDER** |

Paul Egtvedt, Egtvedt Law Firm, PLC, 2915 Wayzata Blvd., Minneapolis, MN 55405, for Petitioner.

Alec J. Beck, Ford & Harrison LLP, 225 South Sixth St., Suite 3150, Minneapolis, MN 55402 and Nancy Van der Veer Holt, Ford & Harrison LLP, 1300 19th St. NW, Ste. 300, Washington, DC 20036, for Respondent.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Petitioner Michael Sullivan's ("Sullivan") Amended Petition to Vacate Arbitration Award ("Am. Pet.") [Doc. No. 9] and related Motion to Vacate Arbitration Award [Doc. No. 2]. A hearing on the Amended Petition was held November 20, 2015. For the reasons stated below, Sullivan's Amended Petition and the associated Motion are denied.

**I.    BACKGROUND**

Sullivan's Amended Petition relates to an arbitration award ("Award")[1] issued by

---

[1] The Award was issued pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq*

the System Board of Adjustment ("SBA")[2] in the summer of 2015.  (Petition to Vacate, Ex. D ("SBA Award") [Doc. No. 1-1].[3])  The SBA considered Sullivan's grievance pursuant to the Collective Bargaining Agreement ("CBA") between the American Air Line Pilots Association, International ("ALPA")[4] and Sullivan's former employer, Respondent Endeavor Air, Inc. f/k/a Pinnacle Airlines, Inc., f/k/a Express Airlines Inc., f/k/a NWA Airlink ("Endeavor").[5]  (See SBA Award at 15–17.)  Sullivan alleged that Endeavor had terminated him as an employee without just cause in violation of the CBA.  (See generally, SBA Award.)  The SBA resolved Sullivan's grievance by upholding Endeavor's December 2006 decision to terminate Sullivan's employment.  (See SBA Award at 22.)

---

("RLA").  As described throughout this Order, judicial review of arbitration awards in general, and under the RLA in particular, is extremely narrow.  In fact, the law requires that the Court take the factual findings of the award as conclusive.  See 45 U.S.C. § 153(p), (q); United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37–38 (1987).  Nevertheless, the Court briefly recounts Sullivan's version of events where he disagrees with the Award.

[2] System Boards of Adjustment are also commonly referred to as "Boards."

[3] Sullivan originally filed a Petition to Vacate [Doc. No. 1] which was accompanied by various exhibits [Doc. No. 1-1].  He subsequently withdrew the original Petition and filed his Amended Petition.  (See Letter Withdrawing Petition dated 10/14/2015 [Doc. No. 10].)  However, in the Amended Petition, Sullivan continues to refer to the exhibits attached to the original Petition.  The Court cites to the ECF page number assigned to these exhibits since multiple exhibits were presented in a single attachment.

[4] Sullivan was a pilot employed by Endeavor and a member of the ALPA.  (Am. Pet. at ¶ 4.)

[5] At the time Sullivan was employed, Respondent was known as Pinnacle Airlines.  (See Resp.'s Opp. to Pet.'s Mot. to Vacate at 3, n.1.)  The Court refers to Respondent by its present name, Endeavor.

### A. Sullivan's Termination and Subsequent Grievance

Endeavor's termination of Sullivan stemmed from several incidents of misconduct that occurred in 2006. (See SBA Award at 9–14; Am. Pet. at ¶¶ 8–35.) On October 17, 2006, Endeavor issued Sullivan two Written Letters of Warning. (SBA Award at 10.) The first related to a flight Sullivan missed on October 13, 2006. (Id.) The second dealt with Sullivan's failure to keep his certifications current so he could continue flying. (Id.) Sullivan now disputes the bases for these Written Letters of Warning. (See Am. Pet. at ¶¶ 12–21.) However, as noted by the SBA, Sullivan did not formally grieve either disciplinary measure and they thus became binding and final. (SBA Award at 10.)

Days later, Sullivan was again disciplined by an Endeavor supervisor for failing to arrive to a flight on time and violations of company dress policy. (See id.) Sullivan was directed to attend a meeting with company and union representatives about his various breaches of company policy. (Id.) However, Sullivan failed to attend this meeting. (Id.) Sullivan claimed he was not told when and where the meeting would occur, but the SBA ultimately concluded he was provided with this information. (Id.) Sullivan later met with Endeavor officials and union representatives on November 14, 2006. (Id.) Sullivan claims that during this meeting, Endeavor officials threatened him in retaliation for his reporting the company to the Federal Aviation Administration ("FAA") on various alleged violations. (See id. at 10, 14–15; Am. Pet. at ¶¶ 22–25.) However, the SBA concluded that Sullivan failed to prove any retaliatory incidents since he offered only his own testimony in support. (SBA Award at 15.)

On November 29, 2006, Endeavor issued a Final Written Letter of Warning

("Final Warning Letter") to Sullivan. (SBA Award at 10; Petition to Vacate, Ex. A ("Final Warning Letter").) The Final Warning Letter informed Sullivan that it related to his "overall duty performance" during the past two years, specifically:

> poor decision-making causing delayed flights, late arrival to the aircraft for showtime, inappropriate use of the ACARS system, failure to remain contactable, failure to report for meetings with company management, unprofessionalism, and substandard uniform compliance.

(Final Warning Letter at 2; see SBA Award at 10.) Sullivan was cautioned that his "appearance and conduct [had] fallen below the standards expected of [him]," and that "any further infractions against company policies or procedures [would] result in additional disciplinary actions up to and including termination." (Final Warning Letter at 2; see SBA Award at 10.)

Less than a month after receiving the Final Warning Letter, Sullivan was involved in two additional incidents which lead to his termination. (See SBA Award at 11–13.) First, during a layover on December 10, 2006, Sullivan made at least two sexually explicit remarks to a female flight attendant in the presence of a first officer. (Id. at 11.) Sullivan admits making these remarks. (Id.; see Am. Pet. at ¶ 29.) Sullivan claims that the remarks came in the context of a sexually charged conversation between the three, held while off duty and in a public place, which occurred after the flight attendant performed a sexually explicit "dance" for Sullivan earlier that day, and that no one objected when Sullivan made the comments. (SBA Award at 11–12; Am. Pet. at ¶¶ 28–30.) However, the SBA concluded that Sullivan's claims about the context of his remarks were unsupported, generally unbelievable, and conflicted with other more

credible evidence. (See SBA Award at 12, 18–20.) Second, on December 11, 2006, Sullivan showed up late to a flight. (Id. at 12–13.) Sullivan admits he was late. (See id. at 13; Am. Pet. at ¶ 31.)

Shortly after these incidents, Endeavor terminated Sullivan's employment. (SBA Award at 13.) Endeavor issued Sullivan a termination letter detailing the reasons for his termination.[6] (See id. at 13–14; Petition to Vacate, Ex. B ("Dec. 22 Termination Letter"), Ex. C ("Dec. 27 Termination Letter").) The termination letter noted that Sullivan's late arrival to his flight on December 11 and his remarks to the female flight attendant violated company policies. (See SBA Award at 13–14; Dec. 22 Termination Letter; Dec. 27 Termination Letter.)

Sullivan subsequently grieved his termination to the SBA pursuant to the terms of the CBA. (SBA Award at 8.) He claimed that his remarks to the flight attendant were not "unlawful" and thus did not violate Endeavor's Anti-Harassment Policy.[7] (See SBA

---

[6] As noted by the SBA, there was a dispute between the parties about exactly when Endeavor decided to terminate Sullivan and which termination letter it sent him. (See SBA Award at 13–14.) The portion of the termination letters addressing Sullivan's remarks to the flight attendant "differ in potentially significant ways." (See id.; compare Dec. 22 Termination Letter with Dec. 27 Termination Letter.) However, as discussed below, the SBA ultimately found this discrepancy immaterial to deciding Sullivan's grievance. (See SBA Award at 19–20.)

[7] Endeavor's Anti-Harassment Policy, contained within its employee handbook, states that Endeavor:

> will not permit employees to engage in unlawful discriminatory practices, or harassment based on any factor prohibited by law: including sexual harassment. Specifically, unlawful harassment . . . is prohibited as unlawful and against stated Company policy. Unlawful harassment involves . . . (c) verbal or physical conduct of a sexual nature; . . . (e)

5

Award at 18.)  Sullivan further argued that his late arrival to the flight on December 11 did not warrant termination, especially since Endeavor's "rule" that pilots arrive at the gate 30 minutes before their scheduled flight was really a guideline.  (See id.)  Endeavor argued that Sullivan's numerous disciplinary issues within just a few months, culminating in his harassing remarks to the flight attendant and late arrival to a flight, constituted just cause for his termination.  (See id. at 17.)

### B. The SBA's Conclusions and Award

In deciding whether Sullivan was terminated for just cause, the SBA employed a two-step approach.  (See SBA Award at 18.)  First, it concluded that Sullivan violated company policy by making sexually explicit remarks to the flight attendant and not arriving to his scheduled flight by the expected time.  (See id. at 18–20.)  Particularly important to the present matter, the SBA rejected Sullivan's understanding of what constituted a violation of the Anti-Harassment Policy.  (See id. at 19–20.)  Sullivan argued that because the Anti-Harassment Policy only prohibited "unlawful" harassment—and his remarks to the flight attendant did not meet the legal standard for harassment—he had not violated the policy.  (See id. at 18, 19.)   The SBA found this understanding "unrealistic and cramped," holding that "the use of the term 'unlawful' in that policy refers to offensive and harassing conduct and words that would tend, if tolerated by the employer, [to] create legal problems and potential liability."  (Id. at 19–

---

    creating an intimidating, offensive or hostile working environment by such conduct.

(See SBA Award at 12, 17 (discussing and quoting the Anti-Harassment Policy).)

20.)  The SBA went on to conclude that Sullivan's comments were "[b]y any reasonable standard . . . offensive and sexually harassing," and in violation of the Anti-Harassment Policy.  (Id. at 20.)  Furthermore, the SBA held that because Sullivan was aware of Endeavor's consistent expectation that pilots arrive to their scheduled flights 30 minutes before departure, Sullivan's late arrival violated this rule and his lack of a legitimate excuse for the late arrival justified more serious discipline.  (Id.)

Second, the SBA found that Sullivan's termination was not too severe a penalty.  (Id.)  Because the events of December 10–11 "were a culmination of a long series of behavioral problems" about which Sullivan had been repeatedly warned, Endeavor was justified in terminating Sullivan.  (Id.)  Importantly, the SBA noted that while Endeavor "might have chosen some other form of discipline like a suspension," it was not required to do so.  (Id.)

### C. Sullivan's Challenges to the Award

Sullivan asks that the Court vacate the Award upholding his termination for one or more of the following reasons.  First, Sullivan claims that his due process rights were violated.  (See Am. Pet. at ¶¶ 38, 40–45; Pet.'s Reply to Resp.'s Opp. ("Reply") at 2–4 [Doc. No. 16].)  Second, Sullivan contends that the SBA exceeded its jurisdiction by not drawing the essence of the Award from the CBA.  (See Am. Pet. at ¶¶ 38, 46–52; Reply at 4–5.)  Finally, Sullivan argues that the SBA improperly ignored the "law of the shop" which directed that Sullivan face less severe disciplinary measures for his infractions, such as a suspension.  (See Am. Pet. at ¶¶ 38, 53–56; Reply at 5–6.)  Endeavor disputes each of Sullivan's contentions and argues that the Award was proper and should be

7

upheld. (See generally Resp.'s Opp. to Pet.'s Mot. to Vacate ("Opp.") [Doc. No. 14].) Furthermore, Endeavor notes that the scope of judicial review for an arbitration award under the Railway Labor Act ("RLA") is very narrow and argues this standard does not allow the Court to overturn the Award. (See Opp. at 1–3, 12–14.) The Court addresses each of Sullivan's arguments in turn.

## II. DISCUSSION

### A. Standard of Review of Arbitration Awards Under the RLA

"In keeping with federal policy favoring the enforcement of arbitration awards, a Board's decision [under the RLA] may be set aside only for (1) failure to comply with RLA requirements, (2) failure to confine itself to matters within its jurisdiction, or (3) fraud or corruption by a Board member." Goff v. Dakota, Minnesota & E. R.R. Corp., 276 F.3d 992, 996 (8th Cir. 2002) (citing 45 U.S.C. § 153(q); Union Pac. R. Co. v. Sheehan, 439 U.S. 89, 93 (1978)). The Eighth Circuit recognizes two additional categories for judicial review under the RLA—procedural due process issues related to a board's procedures, Goff, 276 F.3d at 997, and violations of "well-defined and dominant public policy." Union Pac. R. Co. v. United Transp. Union, 3 F.3d 255, 258 (8th Cir. 1993). Thus, the scope of judicial review for an arbitration award issued under the RLA is "among the narrowest known to the law." Bhd. of Maint. of Way Employees v. Terminal R.R. Ass'n of St. Louis, 307 F.3d 737, 739 (8th Cir. 2002).

The scope of judicial review of an arbitration award issued in a matter involving an air carrier, pursuant to the RLA, is not so clear. See Alvin L. Goldman, Selecting the Correct Standard for Judicial Review of Airline Grievance Arbitration Decisions, 9 U.

8

Pa. J. Lab. & Emp. L. 743 (2007) ("Selecting the Correct Standard") (describing how the jurisdictional limits of judicial review of board decisions in the air carrier context is unclear); Int'l Bhd. of Teamsters v. Cont'l Airlines, Inc., 546 U.S. 811 (2005) (declining to grant certiorari to address this issue). The RLA generally governs labor relations for air carriers. 45 U.S.C. § 181. But, § 153 (which contains the statutory restrictions on judicial review described above) is exempted from this general application. See 45 U.S.C. §§ 181, 182. However, air carriers and their employees are required to establish SBAs to resolve employee grievances, and these SBAs are not to exceed "the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title." 45 U.S.C. § 184. Scholars argue that this section of the statute, along with the legislative history of the RLA and its amendments, means that the narrow scope of judicial review set by 45 U.S.C. § 153(q) also applies to arbitration awards from air carrier SBAs. See Selecting the Correct Standard, 9 U. Pa. J. Lab. & Emp. L. at 760, 782, 800.

A separately developed standard exists for judicial review of arbitration awards under the Labor Management Relations Act ("LMRA").[8] See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 764 (1983). The LMRA standard is that "[u]nless the arbitral decision does not 'dra[w] its essence from the collective bargaining agreement,' a court is

---

[8] The LMRA governs collective labor relations in all other private sector industries and although it encourages arbitration of grievances, it does not mandate arbitration like the RLA. See Selecting the Correct Standard, 9 U. Pa. J. Lab. & Emp. L. at 763.

bound to enforce the award and is not entitled to review the merits of the contract dispute." W.R. Grace & Co., 461 U.S. at 764 (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).  Under the LMRA standard, a court may also consider whether an arbitrator's interpretation of the underlying CBA "would violate 'some explicit public policy' that is 'well-defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'"  United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 43 (1987) (quoting W.R. Grace & Co., 461 U.S. at 766).

The Eighth Circuit has repeatedly cited both standards when assessing air carrier SBA awards.  Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Nw. Airlines, Inc., 858 F.2d 427, 429–30 (8th Cir. 1988); Zeviar v. Local No. 2747, Airline, Aerospace & Allied Employees, IBT, 733 F.2d 556, 558 n.4, 559 (8th Cir. 1984).  More recently, however, the Eighth Circuit, albeit considering an issue other than the scope of judicial review, declared that "[w]e will not ignore the express statutory exclusions in §§ 181 and 182 in order to apply § 153 to the airline industry."  Martin v. Am. Airlines, Inc., 390 F.3d 601, 609 (8th Cir. 2004).  With no explicit guidance, this Court concludes that, at least for the purposes of resolving the present matter, the best way to proceed is to consider both standards of review.  See Bhd. of Maint. of Way Employees v. Soo Line R. Co., 266 F.3d 907, 910–12 (8th Cir. 2001) (applying both the LMRA and RLA standards in upholding a rail carrier board's award).  Sullivan's Amended Petition must fail under either standard.

### B. Sullivan's Procedural Due Process Rights

Sullivan argues that the Award "violates public policy . . . ." (Am. Pet. at ¶ 39.) However, Sullivan's briefing makes clear that his claim is really that the Award violated his due process rights—specifically, "industrial due process"—because the Award "fails to tie the contents of the [Final Warning Letter] to any notice of any conduct that led to its issuance and any specific conduct it notice [sic] prohibition of such that the ultimate consequence of termination should be imposed."[9] (Am. Pet. at ¶ 40; see id. at ¶¶ 39, 41; Reply at 2–4.) Importantly, Sullivan does not claim that his due process rights were violated by or during the SBA proceedings, but rather that the violation occurred because the Award "allowed" Endeavor to terminate him without proper notice. (See Am. Pet. at ¶¶ 40, 45; Reply at 3.)

Arbitration awards under the RLA may be reviewed for procedural due process violations. Goff, 276 F.3d at 997. However, these reviews are limited to the procedural due process afforded by the arbitration process itself, not any alleged due process issues related to the underlying termination. See id. (examining board's hearing procedures for a violation of due process); Armstrong Lodge No. 762 v. Union Pac. R. Co., 783 F.2d 131, 135 (8th Cir. 1986) (same); Shafii v. PLC British Airways, 22 F.3d 59, 64 (2d Cir. 1994) ("Relinquishing courts' ability to review the NRAB's procedures for due process

---

[9] To the extent Sullivan believes the Award violated some other public policy, he has not presented the necessary legal authority showing that policy is "well-defined and dominant" such that it could serve as the basis for vacating the Award. See Sladek v. Nw. Airlines, Inc., No. 01-70 (JRT/FLN), 2001 WL 1640054, at *5 (D. Minn. Sept. 21, 2001) (noting that courts are to "exercise extreme caution" in vacating an arbitration award based on public policy such that only public policies that are "well-defined and dominant" in the law may serve as the basis for vacatur (citing Union Pac., 3 F.3d at 258)).

violations would leave unprotected a plaintiff's legitimate constitutional right to be treated in accord with due process before the Board."); English v. Burlington N. R. Co., 18 F.3d 741, 744 (9th Cir. 1994) ("Cases allowing judicial review of board awards on due process grounds restrict the review to the actions of the board."); see also Goff v. Dakota, Mn. & E. R.R. Corp., No. CIV. 99-5018, 2000 WL 783064, at *6 (D.S.D. Mar. 16, 2000) ("Courts which have allowed judicial review of Board awards on due process grounds restrict the review to actions taken by the Board."). The RLA specifically requires that the board hearing a grievance be presented with a "full statement of the facts and all supporting data bearing upon the disputes," and that the parties be heard in person, through counsel, or by another representative upon the SBA giving the parties due notice of any hearing. 45 U.S.C. § 153(i), (j); see Goff, 276 F.3d at 997 (citing 45 U.S.C. § 153(i), (j) as the standard for procedural due process under the RLA).

Sullivan's claim that the Award must be vacated because of alleged violations of his procedural due process rights are without merit for at least two related reasons. First, Sullivan does not cite, nor can the Court find, any case law supporting his contention that alleged procedural due process deficiencies in an employee's termination may serve as the basis for overturning a subsequent arbitration award under the narrow scope of judicial review described above. Instead, the case law only explicitly allows courts to review an award under the RLA for due process deficiencies in the SBA's procedures, as set forth in 45 U.S.C. § 153(i), (j). See Goff, 276 F.3d at 997; English, 18 F.3d at 744. Sullivan does not allege that there were any procedural deficiencies in the SBA's consideration of his grievance. The Court is persuaded that it was the province of the

SBA to decide whether Sullivan's termination was conducted with the necessary procedural due process, and that the SBA concluded that no violation occurred. (See SBA Award at 18–20; Opp. at 23 ("That an arbitrator may find due process for a termination lacking in a particular case has no bearing on the scope of a court's ability to review an arbitrator's decision to the contrary based on a different set of facts and circumstances. Arbitrators certainly have the right and obligation to decide claims that a grievant was denied due process in the disciplinary process, and that is precisely what the SBA did in this case.").)

Second, Sullivan's claim that he was denied procedural due process because the Final Warning Letter did not provide him with the necessary notice is factually incorrect. The Final Warning Letter, in addition to giving Sullivan a general warning that his "overall duty performance" was unacceptable, provided him with specific examples of his offending conduct, including failure to arrive at flights on time and unprofessionalism. (Final Warning Letter at 2.) Furthermore, Sullivan was plainly warned that "*any* further infractions against company policies and procedures *will result in additional disciplinary actions up to and including termination.*"[10] (Id. (emphasis

---

[10] Although the Eighth Circuit has not addressed the procedural due process requirements specific to employee termination in the context of the RLA, see Goff, 2000 WL 783064 at *7, it has considered the issue in the context of public employees. See Agarwal v. Regents of Univ. of Minnesota, 788 F.2d 504, 508 (8th Cir. 1986). An employee must be given: (1) clear and actual notice of the reasons for termination, (2) notice of the nature and factual basis for the charges, (3) reasonable time and opportunity to present a defense, and (4) a hearing before an impartial board or tribunal. Agarwal, 788 F.2d at 508. "These requirements of procedural due process clearly do *not* necessitate that [an employee] receive notice of and an opportunity to remedy his deficiency . . . ." Id. (emphasis added).

added).) Despite the Final Warning Letter, and the written warnings preceding it, Sullivan subsequently committed two additional violations of Endeavor's employee policies.[11] These facts were considered by the SBA, which concluded Endeavor had just cause to fire Sullivan.[12] (See SBA Award at 10–11, 14, 18, 20.)

### C. Whether the SBA Exceeded Its Jurisdiction

Sullivan argues that the SBA exceeded its jurisdiction because the Award did not draw its essence from the CBA. (See Am. Pet. at ¶¶ 38, 46–52; Reply at 4–5.) Specifically, Sullivan claims that because the sexually explicit comments he made to the flight attendant were not "unlawful," they did not violate Endeavor's Anti-Harassment Policy, which only prohibited "unlawful" practices and conduct. (See Am. Pet. at ¶¶ 48–49, 51; Reply at 5.) Thus, according to him, the Award's "expansive" reading of the Anti-Harassment Policy to include a prohibition on merely "inappropriate" harassing conduct went beyond the CBA, or was contrary to the plain language of that agreement, and thus exceeded the SBA's jurisdiction. (See Am. Pet. at ¶¶ 48, 52; Reply at 4.)

An SBA award is "enforceable as within the scope of the board's jurisdiction

---

[11] This included arriving late to a flight, offending behavior explicitly noticed in the Final Written Warning.

[12] Sullivan makes a passing assertion that the vagueness of the Final Warning Letter essentially allowed Endeavor to convert him into an at-will employee and fire him at any time, for any reason. (See Am. Pet. at ¶¶ 40, 45; Reply at 3.) This claim is belied by the fact that he was provided with the opportunity to make his case to the SBA and argue that Endeavor did not have the just cause necessary to terminate him under the terms of the CBA. (See SBA Award at 15.) The SBA found that Endeavor had just cause to terminate him and thus he was terminated pursuant to terms of the CBA and not as an at-will employee. (See SBA Award at 15, 18–20.)

14

unless the award is without foundation in reason or fact." Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, 858 F.2d at 430 (quotations omitted). So long as the award is "at least rationally inferable, if not obviously drawn" from the underlying CBA, it is considered within the SBA's jurisdiction. Bhd. of Ry., Airline & S. S. Clerks v. Kansas City Terminal Ry. Co., 587 F.2d 903, 906 (8th Cir. 1978) (quoting Bhd. of R. R. Trainmen v. Cent. of Georgia Ry. Co., 415 F.2d 403, 411–12 (5th Cir. 1969)). In considering an SBA's jurisdiction, the issue is not whether the court agrees with the SBA's award, but rather whether the SBA's award "draws its essence from the collective bargaining agreement." Int'l Ass'n of Machinists & Aerospace Workers, 858 F.2d at 430. "Unless the arbitral decision does not draw its essence from the collective bargaining agreement, a court is bound to enforce the award and is not entitled to review the merits of the contract dispute." W.R. Grace & Co., 461 U.S. at 764 (quotations and citations omitted).

Here, the CBA between ALPA and Endeavor prohibited Endeavor from disciplining employees without just cause. (SBA Award at 15.) The SBA was required to interpret and apply the CBA to decide whether Endeavor had the just cause required to terminate Sullivan's employment. (See SBA Award at 15–20.) Making the just cause determination in turn required interpreting Endeavor's Anti-Harassment Policy.[13] (See id. 17, 19–20.) Thus, the Award drew its essence from the CBA and was within proper jurisdictional limits. See Int'l Ass'n of Machinists & Aerospace Workers, 858 F.2d at

---

[13] "It is well established that an arbitrator may look to outside sources to aid in interpreting a collective bargaining agreement . . . ." Bhd. of Maint. of Way Employees, 266 F.3d at 910.

430.

Sullivan disagrees with the SBA's interpretation of the Anti-Harassment Policy. In reviewing the Award, the Court may not conduct a merit based analysis of that interpretation, even if it believed the SBA erred in its interpretation or application. See Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC., 319 F.3d 1060, 1064 (8th Cir. 2003); Int'l Ass'n of Machinists & Aerospace Workers, 858 F.2d at 430. Nonetheless, the Court agrees with the SBA's thorough analysis of the Anti-Harassment Policy. The SBA ruled in relevant part:

> [Sullivan] emphasizes that the Company's anti-harassment policy prohibited only "unlawful" harassment. The implication is that his conduct did not on its own meet the judicial standard for Title VII cases. Although [Sullivan's] brief did not cite the relevant case law, judicial interpretations of Title VII hold that an employer would be liable for an employee's harassment only if the offensive conduct were "severe and pervasive" enough to interfere with an employee's ability to perform her job.
>
> The scope of an *employer's* liability under Title VII has nothing to do with its right to discipline an *employee* for offensive conduct that, on its own, would not make the employer liable. Applying [Sullivan's] interpretation of the Anti-Harassment policy as prohibiting only employee conduct that would make the employer legally liable would mean that an employee could not be disciplined for offensive and harassing conduct until it crossed some line and became "severe" or "pervasive."
>
> That is an unrealistic and cramped reading of [Endeavor's] Anti-Harassment policy. We find that the use of the term "unlawful" in that policy refers to offensive and harassing conduct and words that would tend, if tolerated by the employer, [to] create legal problems and potential liability. [Endeavor] has the right to prohibit all such conduct; it has no obligation to let it continue.

(SBA Award at 19–20.) This interpretation was not a negation of the Anti-Harassment Policy—nor contrary to its plain language—and thus the SBA acted within its

jurisdictional limits. See Bureau of Engraving, Inc. v. Graphic Commc'ns Int'l Union, Local 1B, 164 F.3d 427, 429 (8th Cir. 1999) (allowing for the reversal of an arbitration award where the award is "contrary to the plain language of the [CBA]").

### D. Whether the Award Ignored "Progressive Discipline" and the "Law of the Shop"

Sullivan argues that the Award failed to draw its essence from the CBA because it allowed Endeavor to "ignore contractual progressive discipline and bypass suspension and move directly to termination." (Am. Pet. at ¶ 53.) Sullivan claims that Endeavor's own witness established that Endeavor's "past practice" was to suspend pilots who did not correct their offending behavior before firing them. (Am. Pet. at ¶¶ 35, 55.) Thus, Sullivan contends that by upholding his termination, the Award improperly ignored the "law of the shop" and should be vacated. (Reply at 5–6; see Am. Pet. at ¶¶ 53–57.)

As previously discussed, an arbitration award may be vacated if it fails to draw its essence from the CBA. Int'l Ass'n of Machinists & Aerospace Workers, 858 F.2d at 430. "The essence of the CBA is derived not only from its express provisions, but also from the industrial common law. The industrial common law includes the past practices of the industry and the shop, as well as the parties' negotiating history and other extrinsic evidence of their intent." Bureau of Engraving, Inc., 164 F.3d at 429. Where a CBA's contractual provisions are silent, failure to consider the parties' and industry's past practices may mean an arbitration award failed to draw its essence from the CBA. See id. at 430 ("In sum, the arbitrators' awards failed to draw their essence from the CBA because (1) the CBA was silent regarding remedies, (2) the awards were inconsistent with

17

the parties' past practices, and (3) the awards directly contravene the Bureau's clear intent not to be bound by a monetary remedy during CBA negotiations. The awards here were not derived from an interpretation of the CBA. Rather, the arbitrators were dispensing their own brand of industrial justice.")

Sullivan's claim that the Award allowed Endeavor to "bypass" its alleged past practice of suspending pilots in similar circumstances is without merit for at least two related reasons. First, the CBA is not silent on the issue of discipline. (See SBA Award at 15.) Rather, it states that "discipline" includes, "written warnings, suspension and discharge." (Id.) There is no indication that the CBA requires any "progression" through these disciplinary measures—in fact, the opposite is true. (See SBA Award at 20 ("[Endeavor] might have chosen some other form of discipline like a suspension, but nothing in the [CBA] required it to do so.").) Thus, the SBA interpreted and applied the CBA to conclude that Endeavor had the just cause necessary to terminate Sullivan's employment.

Second, the SBA considered, but dismissed, Sullivan's allegation that the punishment he received did not "fit" the infractions he committed—a claim closely related to his current contention about Endeavor's past practice of progressive discipline. (See SBA Award at 20.) Even if the Court disagreed with the SBA's conclusion that termination was warranted, it could not vacate the award on this basis. See W.R. Grace & Co., 461 U.S. at 764; Gas Aggregation Servs., 319 F.3d at 1064; Int'l Ass'n of Machinists & Aerospace Workers, 858 F.2d at 430. However, the Court again agrees with the SBA's careful analysis:

> [Sullivan's] brief suggested that termination was too severe a penalty. It might have been too severe if the events of December 10-11 stood alone. They do not. They were the culmination of a long series of behavioral problems that included repeated informal counselings, two letters of warning, and a final letter of warning. [Endeavor] might have chosen some other form of discipline like a suspension, but nothing in the [CBA] required it to do so. In light of his overall performance record, we cannot find that termination for those events was unjust.

(SBA Award at 20.) In short, the SBA concluded that Endeavor *had* progressively disciplined Sullivan (e.g., informal counseling, letters of warning, etc.), but because of Sullivan's subsequent infractions, ultimately concluded that Endeavor had just cause to terminate Sullivan's employment.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner Michael Sullivan's Amended Petition to Vacate Arbitration Award [Doc. No. 9] and related Motion to Vacate Arbitration Award [Doc. No. 2] are **DENIED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 16, 2016                    s/ Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge